1  **GERAGOS & GERAGOS, APC**
   MARK J. GERAGOS (SBN 108325)
2  mark@geragos.com
   BEN J. MEISELAS (SBN 277412)
3  meiselas@geragos.com
   ERIC Y. HAHN (SBN 311771)
4  eric@geragos.com
   644 South Figueroa Street
5  Los Angeles, CA 90017
   Telephone: (213) 625-3900
6  Facsimile: (213) 232-3255

7  **LEVI & KORSINSKY LLP**
   LORI G. FELDMAN (*pro hac vice* to be filed)
8  lfeldman@zlk.com
   ANDREA CLISURA (*pro hac vice* to be filed)
9  aclisura@zlk.com
   COURTNEY E. MACCARONE (*pro hac vice* to be filed)
10 cmaccarone@zlk.com
   JUSTIN G. SHERMAN (*pro hac vice* to be filed)
11 jsherman@zlk.com
   30 Broad Street, 24th Floor
12 New York, NY 10004
   Telephone: (212) 363-7500
13 Facsimile: (866) 367-6510

14 *Counsel for Plaintiff*

15              **UNITED STATES DISTRICT COURT**

16              **EASTERN DISTRICT OF CALIFORNIA**

17
   JODIE HEJDUK, individually and on    ) Case No. 1:17-at-00052
18 behalf of all others similarly situated, )
                                         ) **CLASS ACTION**
19                                       )
                          Plaintiff,     )
20                                       )
              v.                         ) <u>DEMAND FOR JURY TRIAL</u>
21                                       )
   SPIN MASTER CORP. and SPIN           )
22 MASTER INC.,                          )
                                         )
23                                       )
                          Defendants.    )
24 _____ )

25

26     Plaintiff Jodie Hejduk ("Plaintiff"), by and through her attorneys, makes the

27 following allegations pursuant to the investigation of her counsel and based upon

28

1  information and belief, except as to allegations specifically pertaining to herself and

2  her counsel, which are based on personal knowledge, against defendants Spin

3  Master Corp. and Spin Master Inc. (collectively referred to as "Spin Master" or

4  "Defendants"):

5  **<u>NATURE OF THE ACTION</u>**

6  1.    Christmas is a time for family, religion, and for millions of eager

7  children around the world, a time for presents. Across the world, corporations and

8  manufacturers clamor to produce the coveted "it" gift item of the season. From

9  Tomogotchis to yo-yos, from video game consoles to Furbies – for corporations,

10  developing, manufacturing, producing, and selling the "it" gift of the season means

11  a Christmas miracle in the form of millions, or potentially billions, of dollars.

12  2.    Yet, in the race to manufacture products for the consuming public, the

13  importance of corporate responsibility should never fail or falter in the name of

14  unmitigated profit.  When we purchase an iPhone, we expect it to make a phone

15  call. When we purchase a yo-yo, we expect it to come back up. Unfortunately, this

16  Christmas season, millions of children and families across the globe were sourly

17  disappointed with coal in their stockings, in the form of a bait-and-switch

18  marketing scheme perpetrated by Spin Master, the manufacturers of this Christmas

19  season's "it" gift, Hatchimals.

20  3.    Hatchimals are interactive stuffed animals that are designed,

21  manufactured, and sold by Spin Master. Hatchimals are one of the most coveted

22  toys in recent memory because they are supposed to "hatch" from the colorful

23  spotted egg they are sold in.

24  4.    Undoubtedly Spin Master developed a brilliant marketing campaign

25  and roll-out with its product Hatchimals. Whether done intentionally or ironically,

26  as the corporate name suggests, this product was all "spin" without appropriate,

27  responsible, or adequate technological development or functionality. Spin Master

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

sold millions of families and their eager children a complete and total fraud. This action is brought on behalf of millions of families throughout this country – for the dutiful parents who waited hours and days outside retail stores, the children who cried tears of joy upon unwrapping their very own Hatchimal, and the American consumer who places faith and trust that they are purchasing products that work for those they love the most.

5.      Spin Master released the toy on October 7, 2016, with enough time to create consumer excitement before the holiday season. By November 2016, the products were difficult to find and sold out in many locations, which led to a black market for Hatchimals. Although the toys were sold for $50 to $60, news outlets reported that some Hatchimals were selling for around $350, or approximately *seven times more than the retail price*.

6.      For the few children who were lucky enough to receive a Hatchimal, many were left disappointed when their Hatchimal failed to live up to its name. Despite Spin Master's representations that the toy would "hatch", many Hatchimals did not hatch.

7.      Spin Master knew that the "hatching" was one of the primary draws of the toy. One of the company's senior vice presidents recognized that getting the toy to hatch "resonates well with kids" and that since children do not know what is inside of the egg "they get excited about what they may get." This excitement was replaced with extreme disappointment for the many children when their Hatchimals did not hatch.

8.      For example, Plaintiff purchased a Hatchimal as a birthday present for her daughter in January 2017. Plaintiff's daughter was delighted to receive the Hatchimal, but dismayed when the Hatchimal did not hatch. Plaintiff and her daughter followed the instructions included in the package, but the Hatchimal

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  failed to hatch. Like many other consumers, Plaintiff purchased a defective
2  product that deprived her daughter of the key attraction of the toy: the hatching.

3      9.    This action seeks redress on a class-wide basis for Defendants'
4  deceptive business practices in selling Hatchimals. Plaintiff brings claims
5  individually and on a class-wide basis against Defendants for breach of express
6  warranty, violations of the California Consumer Legal Remedies Act ("CLRA"),
7  Civil Code §§ 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. &
8  Prof. Code §§ 17200, *et seq.*, California's False Advertising Law ("FAL"), Bus. &
9  Prof. Code §§ 17500, *et seq.*, unjust enrichment, and injunctive relief.

10  <u>**JURISDICTION AND VENUE**</u>

11      10.    The Court has subject matter jurisdiction over this action pursuant to 28
12  U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate
13  amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs,
14  and at least one Class member is a citizen of a state different from at least one
15  Defendant.

16      11.    This Court has personal jurisdiction over Defendants because
17  Defendants conduct substantial business within California, including the distribution
18  and sale of its products in California, and Plaintiff's claims arise from her purchase
19  of Defendants' product in California.

20      12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because
21  Defendants do substantial business in this District and a substantial part of the
22  events giving rise to Plaintiff's claims took place within this District, as Plaintiff
23  purchased Defendant's product within this District.

24      13.    This is a class action for damages relating to the Defendants'
25  manufacture, marketing, promotion, distribution, and sale of its defective
26  Hatchimal products.

27      //

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

**PARTIES**

2      14.    Plaintiff resides in Bakersfield, California.  She purchased a Hatchimal

3  from Wal-Mart in California for approximately $50 on January 14, 2017.   Plaintiff

4  gave her daughter the Hatchimal as a birthday present.  Plaintiff and her daughter

5  followed the instructions included in the packaging, but the Hatchimal failed to

6  hatch.  The toy remains unhatched in its egg.

7      15.    Defendant Spin Master Corp. is a Canadian corporation with its global

8  headquarters located at 121 Bloor St. E, Toronto, Ontario, Canada M4W 1A9. Spin

9  Master is publicly traded on the Toronto Stock Exchange under the ticker symbol

10  "TOY". Spin Master Corp. develops, manufactures, produces, distributes, sells, and

11  markets its products, such as Hatchimals, with the assistance of its related and

12  affiliated entities, including those located in the United States.

13      16.    Spin Master Inc. is a related and affiliated entity of Spin Master Corp.

14  and assists in the development, manufacturing, production, distribution, sale, and

15  marketing of Spin Master Corp. products, including Hatchimals. Spin Master Inc.

16  has an office located at 5880 W. Jefferson Blvd., Suite A, Los Angeles, California

17  90016.

18

**FACTUAL ALLEGATIONS**

19

**A.**    **Spin Master Introduces Hatchimals to the Market**

20      17.    Spin Master manufactures and sells Hatchimals, which were first sold

21  in the United States in October 2016. Hatchimals are interactive stuffed animals

22  that arrive in a colorful spotted egg, with the signature element being that they

23  "hatch".

24      18.    The toys are for children ages 5 and up and come in five different

25  "species": Pengualas, Draggles, Burtles, Owlicorns, and Bearakeet. Some of the

26  models can only be purchased at certain stores. For instance, Burtles, Owlicorns,

27  and Bearakeet are sold only at Walmart, Toys R Us, and Target, respectively.

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

19.    Each Hatchimal is a different color and design. For example, Owlicorns are blue or pink, and have a unicorn horn and a pair of short flappy wings.

20.    Burtles, on the other hand, are blue or purple, with curly antennas and wings. (Pictured below).





21.    The retail value of a Hatchimal is $50 to $60, but the ravenous demand for the toy around the holidays caused prices to skyrocket for those shoppers lucky enough to find one. As early as November 2016, the toys were

6

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

listed as completely out of stock for the normal price at several stores, including toysrus.com, target.com, and Walmart.com.

22.    As of November 18, 2016, children e-retailers were taking orders for Hatchimals for $100.

23.    "At the marketplaces at Amazon, Walmart, and Sears, third-party sellers have been asking $200 to $350 per Hatchimals toy."[1] Ebay auctions frequently resulted in Hatchimals sales of $120 to $200 per toy.

**B.    The Primary Draw of Hatchimals is Their Supposed Ability to "Hatch"**

24.    The signature design element of a Hatchimal is the act of hatching. The name of the product reflects the import of the hatching, since Hatchimal is a portmanteau of "animal" and "hatch."

25.    Hatchimals come inside of a colored and speckled egg. Spin Master represents that the egg is supposed to "hatch with your loving touch."[2]

26.    The instructions for Hatchimals on Spin Master's website makes similar representations.[3] Under "Things You Need to Know" on the second page of the instructions, Spin Master states the following:

- I only hatch once.
- I cannot hatch without you holding me.
- Before I can hatch, you must play with me in my egg.
- After I hatch, raise me through 3 stages (Baby, Toddler, Kid)

---

[1] Brad Tuttle, *Everything You Need to Know About Hatchimals, The Hottest Toy for the Holidays*, TIME, November 18, 2016 (updated November 26, 2016). http://time.com/money/4577339/hatchimals-holiday-toy-2016.

[2] *See* http://www.hatchimals.com/videos.php?loc=us (last accessed January 14, 2017).

[3] *See* http://download-instructions.spinmaster.com/HTCH/F16/Hatchimals_F16_IS_GBL.pdf (last accessed January 14, 2017).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

27.     After rubbing, tapping, and warming the egg, the toy is supposed to "hatch" by slowly pecking its way through the surrounding shell. The hatching process activates when the Hatchimal is removed from its packaging, but the recipient needs to cuddle, tap, and rub the egg to "hatch" the Hatchimal. While still inside the egg, the Hatchimal is supposed to communicate with the recipient to indicate what it needs to hatch. The sounds the toy makes and the color of the Hatchimal's eyes, which can change and be seen through the egg's shell, instructs recipients whether the toy needs more cuddling or patting to initiate the hatch.

28.     According to the instructions posted on Defendants' website and also included in Hatchimals' packaging, hatching will "take up to 20-25 minutes in TOTAL." [4]

29.     Spin Master executives recognized that the "hatching" aspect of the toy is a key draw. James Martin, senior vice president and head of global business at Spin Master, recognized that getting the toy to hatch "resonates well with kids[.]"[5] He continued: "They don't know what's inside and they get excited about what they may get. There's this anticipation that builds."[6]

## C.     Contrary to Spin Master's Representations, Hatchimals Do Not Hatch As Advertised

30.     Although Spin Master advertised that Hatchimals would "hatch with your loving touch," many of the toys did not perform as promised. Indeed, many of the Hatchimals did not hatch as advertised.

31.     For example, Plaintiff purchased a Hatchimal in January 2017 from Wal-mart in California for approximately $50.  She purchased the Hatchimal as a

---

[4] *Id.*
[5] Rachel Rabkin Peachman, *The Hunt for Hatchimals, the Elusive Toy of the Holiday Season*, THE NEW YORK TIMES, December 5, 2016, https://www.nytimes.com/2016/12/05/well/family/the-hunt-for-hatchimals-the-elusive-toy-of-the-holiday-season.html.
[6] *Id.*

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

birthday present for her daughter. Plaintiff's daughter was delighted to receive the Hatchimal, but dismayed when the Hatchimal did not hatch. Plaintiff and her daughter followed the instructions included in the package, but the Hatchimal failed to hatch. The Hatchimal is still in its egg.

32.     The comments section on Amazon.com is replete with customer complaints about Hatchimals failing to hatch, including the following:

- I paid triple the price so I could get my 5 yr. old daughter what she wanted but when it was time to play with it the Hatchimal would not respond inside the egg. We watched every YouTube video we could for help, but to no avail... we had to open it ourselves ☹ It was somehow turned to off.[7]

- I preorder[ed] [sic] this Hatchimal in October and saved it for my daughter to open on Christmas morning. It did not "wake up" once removed from the packaging as it should have and we could not get it to hatch out of its egg at all. We let my daughter use a small mallet to make a crack in the eggshell and then she used her hands to break the rest of the shell off. Once the hatchimal was removed from the egg it still would not turn on. My husband replaced the batteries and it woke right up and worked fine. Unfortunately the most exciting part about this toy is waiting for the animal to hatch, hence the name HATCHimal. Very disappointed. It put a damper on the excitement of the day and my 4 year old was really bummed. It's sad to think of a kid receiving this as their only present and then it not working properly. I hope they figure out this issue and send out replacements but I'm not holding my breath.[8]

- We were very displeased with our hatchimal. My daughter was super excited to receive it for her birthday. After 3 hours of attempted hatching we gave up.

---

[7] *See* https://www.amazon.com/Hatchimals-6034332-Penguala-Teal-Pink/product-reviews/B019HP1XJU/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterByStar=one_star&reviewerType=avp_only_reviews&showViewpoints=0 (last accessed January 12, 2017).

[8] *See* https://www.amazon.com/Hatchimals-6034332-Penguala-Teal-Pink/product-reviews/B019HP1XJU/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterByStar=one_star&reviewerType=avp_only_reviews&showViewpoints=0 (last accessed January 12, 2017).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

It did not hatch and that is half the fun for these kids. Don't spend all your money on this one.[9]

- My 6 year old daughter wanted this from Santa and was the only thing she has wanted for 3 months. Christmas morning she was so excited when she saw it. Unfortunately, the egg did nothing. We followed all steps and even went to the Hatchimal website to troubleshoot. We tried 8 different steps trying to get it to do something, however the battery was apparently dead inside the egg. My daughter eventually (after about 2 hours) decided to just crack the egg itself to get it out. We had to replace the batteries for it to turn on. As you know, the "hatching" of the HATCHimal is the whole reason for this toy. She was pretty let down for Christmas as was I considering I saved my money and ended up paying 3 x's the amount for it. These are normally $49.99 and due to the craze, everyone marked them up. I am very disappointed and feel like I wasted my money that I worked very hard for.[10]

- I ordered it for my daughter as a birthday present from Amazon US. It's an international order hoping to get it asap. The shipping is fine as it arrived earlier than expected. However, the egg didn't hatch. My girl was so excited to unpack it. The noise and the blinking eyes were so cute. However after waiting for 2 days, holding it, playing with it , rubbing it, tilting it .....it still didn't hatch. It made her very disappointed. As a birthday present, it is even worse....so upset! The surprise is having a defective toy for birthday. She really wants to open it, but what for if you have to hatch it manually?! Finally, have to decide to have her saying goodbye to the "not able to hatch" egg and not knowing what color the birdie is. It's so disappointing. Besides, I have to arrange sending it back to Amazon far away from HK![11]

---

[9] *See* https://www.amazon.com/Hatchimals-6034332-Penguala-Teal-Pink/product-reviews/B019HP1XJU/ref=cm_cr_getr_d_paging_btm_10?ie=UTF8&filterByStar=one_star&reviewerType=avp_only_reviews&showViewpoints=0&pageNumber=10 (last accessed January 12, 2017).
[10] *See* https://www.amazon.com/Hatchimals-6034332-Penguala-Teal-Pink/product-reviews/B019HP1XJU/ref=cm_cr_getr_d_paging_btm_8?ie=UTF8&filterByStar=one_star&reviewerType=avp_only_reviews&showViewpoints=0&pageNumber=8 (last accessed January 12, 2017).
[11] *See* https://www.amazon.com/Hatchimals-6034332-Penguala-Teal-Pink/product-reviews/B019HP1XJU/ref=cm_cr_getr_d_paging_btm_11?ie=UTF8&filterByStar=one_star&reviewerType=avp_only_reviews&showViewpoints=0&pageNumber=11(last accessed January 12, 2017).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- Don't bother. I bought this as a pre order in Oct. To give [t]o [sic] my daughter for her birthday at the beginning of Dec [f]or for Christmas. She's been begging for it since she first saw it. So i gave it to her for her birthday today. We had it out of the box for maybe 5 minutes. Its eyes lit up, but cycled so quickly it was clear it wasn't actually reacting to touch based on the color of the eyes. We set it on the table and it went to sleep. A couple minutes later we picked it back up and it won't wake up at all. I am going to call customer support, but of course they are not open until Monday. My daughter is so disappointed. Will update if CS is any help.[12]

33.     Consumers posted similar comments on the Toys R Us website, complaining that the Hatchimals they purchased did not hatch.

- We got one of these for a birthday gift. I'm so incredibly disappointed. It doesn't work as advertised. We played with silly egg and it would not hatch. I've done everything I'm supposed to do. We were right there upon the opening so we know it wasn't dropped. Our daughter is do upset. We both tried to get it to work for her to no avail. No lights nada. I can't even exchange in case it was just [a] [sic] did because you cannot find in stores and returning it was [a] [sic] pain as since it's an electronic toy past the time frame. Frustrated.[13]

- My daughter got this as a Christmas gift from her grandma (celebrated yesterday) We opened it and did just what the box said only to have it do NOTHING!! it never lit up never made noise nothing. After 4 hours and my daughter crying because its not doing what the videos show. I suggested we hatch it our self she finally agreed and so that's what we did cracked it open to find the batteries were dead so it would have NEVER done anything. What a joke... Never would I recommend this to anyone![14]

---

[12] *See* https://www.amazon.com/Hatchimals-6034332-Penguala-Teal-Pink/product-reviews/B019HP1XJU/ref=cm_cr_getr_d_paging_btm_10?ie=UTF8&filterByStar=one_star&reviewerType=avp_only_reviews&showViewpoints=0&pageNumber=10 (last accessed January 12, 2017).

[13] *See* http://www.toysrus.com/buy/toys/hatchimals-draggles-by-spin-master-6028873-88534486 (last accessed January 12, 2017).

[14] *See* http://www.toysrus.com/buy/see-all-pet-shop-electronics-pets/hatchimals-draggles-purple-

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    34.    These consumers, as well as Plaintiff and other Class members,

2   sustained damages as a direct and proximate result of Defendants' wrongful conduct

3   and omissions regarding the research, formulation, manufacture, testing, marketing,

4   and sale of Hatchimals.

5    35.    Defendants made numerous representations in its instructions and

6   instructional videos that the Hatchimals would hatch, including the following:

7    •   Hatchimals would "hatch with your loving touch."[15]

8    •   I only hatch once. [16]

9    •   I cannot hatch without you holding me.[17]

10    •   Before I can hatch, you must play with me in my egg.[18]

11    •   After I hatch, raise me through 3 stages (Baby, Toddler, Kid)[19]

12    36.    Moreover, Defendants have failed to take proper action to address its

13   malfunctioning product. After a flood of consumer complaints that Hatchimals did

14   not Hatch, on December 28, 2016, Spin Master posted a comment on its Facebook

15   page claiming that the company is "100% committed to bringing the magic of

16   Hatchimals to all of our consumers."[20] The post stated:

> While the vast majority of children have had a magical experience
> with Hatchimals, we have also heard from consumers who have
> encountered challenges. We are 100% committed to bringing the
> magic of Hatchimals to all of our consumers. To ensure all queries
> receive a timely response, we have increased the number of
> Consumer Care representatives, extended our hours, and increased
> the capacity for callers in the queue to help prevent calls dropped
> due to the holiday volume. We have also created troubleshooting

---

6034334-105339906 (last accessed January 12, 2017).

[15] *See* http://www.hatchimals.com/videos.php?loc=us. (last accessed January 14, 2017).

[16] http://download-instructions.spinmaster.com/HTCH/F16/Hatchimals_F16_IS_GBL.pdf.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] https://www.facebook.com/SpinMaster (last accessed January 14, 2017).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

tips on Hatchimals.com and a video with the Top 5 Things To Know About Hatchimals: https://youtu.be/didliyZclcQ.

We are committed to doing everything possible to resolve any consumer issues. We sincerely apologize and thank everyone who is experiencing an issue for their patience.

37.    The meager remedial measures that Spin Master took have been ineffective. On December 28, 2016, the same day that Spin Master announced its new measures to address the storm of complaints about Hatchimals failing to hatch, "dozens of complaints regarding poor customer service continued to flood Spin Master's Facebook page . . . with some customers reporting being on hold for as long as three hours before having their call disconnected."[21] One user wrote on Spin Master's Facebook page that they "have called every day been on hold for hrs [sic] only to be hung up on[.]"[22] Another user expressed similar frustrations: "So far I have sent 3 messages (1 email, 2 DM) to this company regarding my daughters dysfunctional Hatchimal and have not received a response except for their automated message that says someone will be getting back to me shortly. No one has[.]" [23]

38.    Leaving aside that the few token remedial measures that Spin Master announced are ineffective, they are also insufficient and incomplete. Indeed, Spin Master has not offered to recall the product or provide reimbursements to consumers who purchased the defective product.

39.    Plaintiff    and    other    Class    members    relied    on    Defendants' misrepresentations and omissions regarding the benefits of the Hatchimals.

---

[21] Nicole Bogart, *Hatchimal won't hatch? 2016's most coveted toy is causing customer service woes for parents*, GLOBAL NEWS, December 28, 2016, http://globalnews.ca/news/3149966/hatchimals-wont-hatch-toy-hatching-customer-service-woes/.

[22] *Id.*

[23] *Id.*

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, the Class, and the Subclass (as defined below) have been damaged by Defendants' deceptive and unfair conduct and wrongful inaction in that they purchased Hatchimals which they would not have otherwise purchased or would not have paid as much for had Defendants not misrepresented that the Hatchimal would not hatch.

## CLASS DEFINITION AND ALLEGATIONS

40.    Plaintiff seeks to represent a class defined as all persons in the United States who purchased a Hatchimal (the "Class") from its release on October 7, 2016 through present.  Excluded from the Class are persons who purchased a Hatchimal for purposes of resale.

41.    Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased Hatchimals in California (the "California Subclass").

42.    Excluded from the Class and California Subclass are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

43.    Plaintiff brings this case pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

44.    Plaintiff reserves the right to amend the Class definitions if further information and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

**A.    Numerosity**

45.    Members of the Class and the California Subclass are so numerous that their individual joinder herein is impracticable. Plaintiff believes that members of the Class and the California Subclass number in the hundreds of thousands. The precise number of Class members and their identities are currently unknown to Plaintiff but may be determined through discovery. Class members may be notified

of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

**B.     Commonality**

46.     Common questions of law and fact exist as to all members of the Class and the California Subclass and predominate over questions affecting only individual Class and California Subclass members. Common legal and factual questions include, but are not limited to:

  a.  Whether Defendants' practices and representations related to the marketing, labeling and sales of Hatchimals were false, misleading, deceptive, unfair, and/or unlawful in any respect;

  b.  Whether Defendants breached an express warranty created through the labeling and marketing of Hatchimals;

  c.  Whether Defendants' conduct as set forth above economically injured Plaintiff and Class Members; and

  d.  Whether Plaintiff and Class Members are entitled to injunctive relief.

**C.     Typicality**

47.     The claims of the named Plaintiff are typical of the claims of the Class and the California Subclass she seeks to represent in that the named Plaintiff was exposed to Defendants' misleading labeling and advertising, purchased a Hatchimal, and suffered a loss because of that purchase.

**D.     Adequacy**

48.     Plaintiff is an adequate representative of the Class and the California Subclass because her interests do not conflict with the interests of the Class or Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intend to prosecute this action vigorously.  The interests of Class and California Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**E.      Predominance and Superiority**

49.      The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

50.      The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and California Subclass members. Each individual member of the Class and California Subclass may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**F.      Declaratory and Injunctive Relief**

51.      Certification also is appropriate under Rule 23(b)(2) because Defendants acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the injunctive relief sought on behalf of the Class. Further, given the large number of consumers of Hatchimals, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## COUNT I

### (California's Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*)

52.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

53.     Plaintiff brings this Count individually and on behalf of the California Subclass.

54.     Plaintiff and California Subclass members are consumers who purchased Hatchimals for personal, family, or household purposes. Accordingly, Plaintiff and California Subclass members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff and California Subclass members are not sophisticated experts with independent knowledge of the formulation and effects of Hatchimals.

55.     At all relevant times, Hatchimals constituted a "good" as that term is defined in Cal. Civ. Code § 1761(a).

56.     At all relevant times, Defendants were a "person" as that term is defined in Civ. Code § 1761(c).

57.     At all relevant times, Plaintiff's purchase of a Hatchimal(s), and the purchases of the product by other California Subclass members, constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(e). Defendants' actions, inactions, representations, omissions, and conduct has violated, and continues to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of Hatchimals to consumers.

58.     The policies, acts, omissions, and practices described in this Complaint were intended to and did result in the sale of Hatchimals to Plaintiff and the California Subclass.  Defendants' practices, acts, omissions, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

59.    Defendants represented that Hatchimals had sponsorship, approval, characteristics, uses, and benefits which it did not have in violation of Cal. Civ. Code § 1770(a)(5).

60.    Defendants represented that Hatchimals was of a particular standard or quality when Defendants were aware it was of another, in violation of California Civil Code § 1770(a)(7).

61.    Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Hatchimals was a toy that would hatch when the toys did not hatch.

62.    Defendants advertised Hatchimals with the intent not to sell it as advertised in violation of § 1770(a)(9) of the CLRA.  Defendants did not intend to sell Hatchimals as advertised because Defendants knew that Hatchimals would not hatch.

63.    Plaintiff and California Subclass members suffered injuries caused by Defendants' misrepresentations and omissions because: (a) Plaintiff and California Subclass members would not have purchased a Hatchimal(s) or would not have paid as much for the product if they had known the true facts; (b) Plaintiff and California Subclass members purchased Hatchimals because of Defendants' misrepresentations and omissions; and (c) Hatchimals did not have the level of quality, effectiveness, or value as promised.

64.    Plaintiff and the California Subclass seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

65.    Before the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a).  A true and correct copy of Plaintiff's letter is attached as Exhibit A.  On January 18,

2017, Plaintiff sent Defendants a letter via certified mail, return receipt requested, advising Defendants that it is in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.  If the relief requested has not been provided within thirty (30) days, Plaintiff will amend this Complaint to include a request for damages pursuant to the CLRA.

66.     Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

## COUNT II

**(California's False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.*)**

67.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

68.     Plaintiff brings this Count individually and on behalf of the California Subclass.

69.     California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

70.     Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements, and material omissions, to promote the sale of Hatchimals, as described above, and including, but not limited to, representing that Hatchimals will hatch when Defendants knew or should have known that they would not.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

71.   Defendants knew or should have known, through the exercise of reasonable care, that its statements were untrue and misleading.

72.   Defendants' actions and omissions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

73.   As a direct and proximate result of these acts and omissions, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiff and California Subclass members would not have purchased Hatchimals or would not have paid as much for it if they had known the true facts; (b) Plaintiff and California Subclass members purchased Hatchimals due to Defendants' misrepresentations and omissions; and (c) Hatchimals did not have the level of quality, effectiveness, or value as promised.

74.   Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers. Plaintiff and the California Subclass are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants because of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## <u>COUNT III</u>

**(California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

75.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

76.   Plaintiff brings this Count individually and on behalf of the California Subclass.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

77.   The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent," business act or practice and any false or misleading advertising.

78.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for UCL violations. By virtue of its above-described wrongful actions, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

79.   "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

80.   Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

81.   Defendants violated the "unlawful prong" by violating the CLRA and the FAL, as well as by breaching express warranties as described herein.

82.   Defendants' acts and practices constitute "unfair" business acts and practices in that the harm caused by Defendants' wrongful conduct outweighs any utility of such conduct, and that Defendants' conduct: (i) offends public policy; (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiff and the Class.

83.   There were reasonably available alternatives to further Defendants' legitimate business interests, including warning consumers and the public about the

21

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

risks that Hatchimals might not hatch, and recalling the product, other than Defendants' wrongful conduct and omissions described herein.

84. The UCL also prohibits any "fraudulent business act or practice." Defendants' above-described claims, nondisclosures, and misleading statements were false, misleading, and likely to deceive the consuming public in violation of the UCL.

85. As a result of Defendants' above-described wrongful actions, inactions, and violation of the UCL; Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and California Subclass members would not have purchased Hatchimals or would not have paid as much for the product if they had known the true facts; (b) Plaintiff and California Subclass members purchased Hatchimals due to Defendants' misrepresentations and omissions; and (c) Hatchimals did not have the level of quality, effectiveness, or value as promised.

86. Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Subclass are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants because of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT IV
### (Breach of Express Warranty)

87. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

89.    In connection with the sale of Hatchimals, Defendants, as the designers, manufacturers, marketers, distributors and/or sellers issued written warranties by representing that Hatchimals would hatch.

90.    Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding Hatchimals, became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that Defendants would conform to those affirmations of fact, representations, promises and descriptions.

91.    In fact, Hatchimals do not hatch as advertised.

92.    Plaintiff and proposed Class members were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Hatchimals or would not have paid as much for the product had they known the true facts and (b) Hatchimals did not have the characteristics, uses, or benefits as promised.

## COUNT V
### (Unjust Enrichment)

93.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

94.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

95.    Plaintiff and members of the Class conferred benefits on Defendants by purchasing Hatchimals.

96.    Defendants have been unjustly enriched in retaining revenues derived from Plaintiff's and Class members' purchases of Hatchimals. Retention of that revenue under these circumstances is unjust and inequitable because Defendants misrepresented and omitted facts concerning the characteristics, uses, and benefits

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    of Hatchimals and caused Plaintiff and Class members to purchase Hatchimals and

2    to pay more for it, which they would not have done had the true facts been known.

3         97.    Because Defendants' retention of the non-gratuitous benefits conferred

4    on it by Plaintiff and members of the Class is unjust and inequitable, Defendants

5    must pay restitution to Plaintiff and members of the Class for its unjust enrichment,

6    as ordered by the Court.

7                              **PRAYER FOR RELIEF**

8         WHEREFORE, Plaintiff, individually and on behalf of all others similarly

9    situated, seek a judgment against Defendants, as follows:

10        a.    For an order certifying the Class under Rule 23 of the Federal Rules

11              of Civil Procedure and naming Plaintiff as representative of the

12              Class and California Subclass and Plaintiff's attorneys as Class

13              Counsel to represent the Class and California Subclass;

14        b.    For an order declaring that Defendants' conduct violates the statutes

15              referenced herein;

16        c.    For an order finding in favor of Plaintiff and the Class and

17              California Subclass on all counts asserted herein;

18        d.    For an order requiring Defendants to recall Hatchimals;

19        e.    For compensatory, statutory, and punitive damages in amounts to be

20              determined by the Court and/or jury;

21        f.    For prejudgment interest on all amounts awarded;

22        g.    For an order of restitution and all other forms of equitable monetary

23              relief;

24        h.    For an order enjoining Defendants from continuing the unlawful

25              practices detailed herein; and

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1         i.     For an order awarding Plaintiff and the Class and California

2              Subclass their reasonable attorneys' fees and expenses and costs of

3              suit.

4  **DEMAND FOR JURY TRIAL**

5       Plaintiff hereby demands a trial by jury on all issues so triable.

6

7  DATED: January 19, 2017       **GERAGOS & GERAGOS**

8                      By:   */s/ Mark Geragos*

9                      MARK J. GERAGOS (SBN 108325)
mark@geragos.com

10                     BEN J. MEISELAS (SBN 277412)
meiselas@geragos.com

11                     ERIC Y. HAHN (SBN 311771)
eric@geragos.com

12                     644 South Figueroa Street
Los Angeles, CA 90017

13                     Telephone: (213) 625-3900
Facsimile: (213) 232-3255

14

15                     **LEVI & KORSINSKY LLP**
LORI G. FELDMAN (*pro hac vice* to be filed)

16                     lfeldman@zlk.com
ANDREA CLISURA (*pro hac vice* to be filed)

17                     aclisura@zlk.com
COURTNEY E. MACCARONE (*pro hac vice* to be

18                     filed)
cmaccarone@zlk.com

19                     JUSTIN G. SHERMAN (*pro hac vice* to be filed)
jsherman@zlk.com

20                     30 Broad Street, 24th Floor
New York, New York 10004

21                     Telephone: (212) 363-7500
Facsimile: (212) 363-7171

22

23                     *Counsel for Plaintiff*

24

25

26

27

28

25